Nott, J.,
delivered the opinion of the court:
This is an action brought to recover damages for the violation by the defendants of their contract for the sale of the hides, hoofs, horns, and tallow of all cattle slaughtered by them in the late military Department of Virginia and North Carolina. The claimant’s damages are laid at $100,500. The defendants on their side set up a counter-claim, based on the nonperformance of the contractor, and lay their damages thereon at $33,915. They also set up a draft given to them by the claimant for $2,727 58, and demand judgment for $36,642 58.
The case being exceedingly involved, and the court being-divided on some of its most important points, we reduce the decision to the form of ultimate findings and conclusions, which may best enable the parties, if it be desired, to have the case reviewed by the Supreme Court.
I. Lieutenant Colonel Small, commissary of subsistence for the military department of Virginia and North Carolina, advertised in December, 1864, for proposals for the “hides, tallow, hoofs, horns, cfee., of all government cattle slaughtered within the limits of the department,” as set forth in the petition, being Exhibit A,- annexed thereto. The claimant sent in a proposal, which was accepted by the commissary. A contract was drawn up by the commissary, bearing date the 10th December, 1864, (being Exhibit B, annexed to the petition,) and sent to the claimant to be executed. The contract thus tendered varied from the advertisement in several particulars, and made no reference to it. The claimant refused to execute the instrument, and wrote to the commissary, demanding several explanations, and among others, as to the “ &e.f of the advertisement, which was omitted from the contract, and he insisted that when bidding he understood the “ &cP to refer to and include all of what is known among butchers as the “fifth qua/rterf which term is understood to embrace the u hide, tallow, hoofs, horns, Iwer, heart, head, tongue, tripe, and tailP The contract tendered to the claimant specified as the subj ect of the agreement only *423 the first four of these items. The commissary replied in writing, on the 14th December, 1864: “ The contractor in this department has never received the liver, heart, and chucks, but the other .articles of the fifth quarters have been turned over to him.” On the faith of this assurance, the claimant then executed the contract, but no written alteration was inserted in the body thereof. The commissary subsequently returned to the Commissary General a copy of his letter to the claimant, being Exhibit C, annexed to the petition.
And upon these facts the court, as a conclusion of law, decides that the advertisement for proposals may be admitted in evidence for the better construction of the contract, but that it does not enlarge, control, or change the express terms of the contract, and is to be considered as merged in it.
And the court also decides as a conclusion of law that the letter of the commissary, written after the claimant had refused to execute the instrument, and. as an inducement for him so to do, is not open to the ordinary objection of parol evidence offered to change the terms of a written contract, but that, on the contrary, it is admissible, either as a written reformation of the instrument before execution, or as an agreed construction to be given to it;. and the claimant having executed the contract upon the faith of it, and the Commissary General being-apprised of the letter, and having power to terminate the contract therein given at any time, and not having done so, the defendants are estopped from objecting to the letter, and from denying the construction which it gives to the agreement.
And, also, that the contract thus reformed stands as if the parties by exjn-ess words had included therein all the articles of the fifth quarter, except the liver, heart, and chucks.
II. At the time this contract was entered into the Department of Virginia and North Carolina included Fort Monroe, and sixty miles around the same, with that part of Virginia south of the Rappahannock River, and east of the railroad from Fredericksburg to Richmond, Petersburg, and Weldon, Northampton and Accomae Counties, and the State of North Carolina. On. the 12th of January, 1865, the department was divided by the State of North Carolina being transferred to the Department of the South. The Department of Virginia remained, and Lieutenant Colonel Small continued to be the chief commissary thereof. The claimant, on the 1st January, *424 1865, the day when the contract went into operation, as provided by the second article thereof, was ready to perform the obligations thereof at Newbern, in North Carolina, but he was not ready to perform at any other place where cattle were slaughtered in that State, and did not offer to do so, except that on the 10th March, 1865, he demanded the offal óf the cattle slaughtered at Wilmington. The defendants’ commissary at Wilmington refused to deliver the same. But the commissary at Newbern did furnish to the claimant the offal of the cattle slaughtered at that place, both before and subsequent to the 12th January, 1865, notwithstanding the division of the department.
And upon these facts the court, as a conclusion of law, decides that under the provision of the contract, which provides for the sale of the “ hides, tallow, hoofs, and horns of all government cattle (not captured cattle) slaughtered within the limits of the Department of Virginia and North Carolina,” the claimant was not entitled to the offal of the cattle slaughtered in North Carolina after that State had been transferred to the Department of the South. And 'the court also decides that the claimant was, at the same time, by the transference of the said State, released from all obligations of his contract, so far as they extended to the government cattle slaughtered therein.
III. The commissary at Newbern furnished to the claimant, on and after the 1st January, 1865, and during the continuance of the period specified in the contract, the hides, tallow, hoofs, and horns of all government cattle slaughtered at Newbern, and he continued to deliver the samé notwithstanding the division of the Department of Virginia and North Carolina. The claimant demanded of him the remaining articles contracted for, viz, the head, tongue, tripe, and tail, and produced before the commissary sufficient evidence of the contract as reformed by Lieutenant Colonel Small before execution as aforesaid. But the commissary refused to deliver such articles to the claimant both before and after the division of the department. The cattle there slaughtered were 720, and the value of the parts withheld was $1 50 per head, the aggregate value being $1,080.
And upon these facts the court, as a conclusion of law, decides that the commissary at Newbern, having elected to continue the contract, with a full knowledge of the provisions thereof, thereby adopted all of the obligations thereof, and that the *425 claimant, thereunder, was entitled to receive, both before and after the division of the Department of Virginia and North Carolina, the head, tail, tripe, and tongue of all cattle slaughtered by such commissary, and is entitled to recover the value thereof.
IV. The claimant, at the termination of his contract, held in his possession at Newbern 174 hides and 12 barrels of tallow. Being unable to procure transportation, he left this property at Newbern in charge of the commissary. It was never returned to him. The value thereof was $2,958.
And upon these facts the court, as a conclusion of law, decides that, under the sixth article of the contract, the defendants were not bound to furnish transportation to the claimant from Newbern to Fortress Monroe, and also that the claimant, having failed to show that the hides and tallow left by him in charge of the commissary were used or expended in the service of, or for the benefit of, the defendants, the defendants are not chargeable therewith, and that for these the claimant should not recover.
V. The claimant, on the 1st January, 1865, was ready and willing and offered to collect the offal of all cattle slaughtered in the State of Virginia, as required by his contract, but the chief commissary of the department designated-Fortress Monroe and Fort Magruder as the only points in Virginia to which the commissary department then had access. The claimant collected the offal of all cattle slaughtered at these points, but he did not again offer to perform at other points, nor did the defendants ever notify him that other points had become accessible. There were slaughtered between the 1st January and 30th June, 1865, of Government cattle, not captured, in both theStates of Virginia and North Carolina, 4,800, of which the claimant collected the offal of only 758 cattle.
And upon these facts the court, as a conclusion of law, decides that, as to so much of the department as-lay within the State of Virginia, the offer of the claimant to collect the offal, followed by his performance at the points designated, was a sufficient compliance with the contract, and that it then became the duty of the defendants to notify the claimant of any new points at which they might desire to have the offal col-ected. And that as to so much of the department, as was originally within the State of North Carolina, the defendants rescinded their contract by separating it from the original depart- *426 meat, and transferring it to the Department of tbe South, on the 12th January, 1865, as set forth in the second finding of fact. And the court therefore decides that the claimant is not liable under the fourth article of the contract for the offal of every animal slaughtered within the original limits of the Department of Virginia and North Carolina, and that the defendants are not entitled to recover damages therefor under their counter claim.
VI. The claimant, in payment of the - offal received by him, as set forth in the third finding of fact, gave to the defendants his certain draft, or bill of exchange, dated the 2d day of June, 1805, at Newbern, North Carolina, and drawn upon the firm of Lapham & Clarendon, in the city of New York, payable to the defendant’s commissary, Captain William L. Palmer, being for the sum of $2,727 58. The payment of this draft was stopped by the claimant before presentation, and neither it nor the balance of his indebtedness for which the draft was given has ever been paid.
And upon these facts the court, and as a conclusion of law, decides, that the defendants are entitled to recover upon the said draft and indebtedness of the claimant the sum of $2,727 58, and that the amount of $1,080, found due-from the defendants to the claimant by the third finding of fact, should be set off and deducted from the same, and judgment be rendered against the claimant for the balance remaining.
The judgment of the court is, that the defendants recover of the claimant the sum of $1,647 58.
Peck, J.:
While I concur in the judgment pronounced by the opinion in this case, I dissent from so much of the opinion as holds that the division of the military department by one of the parties without the consent of the other changes the rights and obligations of either of them.
Poking, J., concurs in this conclusion.